**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 07-117-DLB**

**DARLA SPARKS**                                                                                    **PLAINTIFF**


**vs.**                          **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*


Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Darla Sparks filed applications for disability insurance benefits (DIB) and social security income (SSI) payments on May 10, 2005.  (Tr. 54-57, 251 - 54).  At the time of filing, Plaintiff was 26 years old and alleged a disability onset date of September 4, 2003.  (Tr. 54, 251).  She asserts she is disabled due to number of maladies, including a learning disability, poor reading comprehension, difficulty understanding and getting along with others, knee pain caused by arthritis, and obesity.  (Tr. 70, 77).  Her applications were denied initially and on reconsideration.  (Tr. 37-40, 43-45).  At Plaintiff's request, an administrative hearing was conducted on January 4, 2007, by Administrative Law Judge

1

(ALJ) Richard C. Bentley.  (Tr. 255-93).  On January 25, 2007, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI payments.  (Tr. 11-23).  This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 30, 2007.  (Tr. 5-7).

On May 1, 2007, Plaintiff filed the instant action.  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. #8, 9).

## II. DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.    The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. 16).  At Step 2, the ALJ found Plaintiff's borderline intellectual functioning to be a severe impairment, but determined her obesity and knee pain to be non-severe impairments as neither significantly limited Plaintiff's physical or mental ability to do basic work activities.  (Tr. 17).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal, one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 17).  Specifically, the ALJ evaluated her mental function under Listing 12.05 (Mental Retardation) and concluded that she did not meet or equal the requirements of the Listing.

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform work at all exertional levels.  (Tr. 20).  Due to Plaintiff's mental impairment, the ALJ restricted her to unskilled work: "simple, repetitive, low stress, entry level work at all

exertional levels."  (Tr. 20, 21).

As the Plaintiff had no past relevant work to which she could return, (tr. 22), the ALJ continued to the final step of the sequential evaluation.  At Step 5, the ALJ considered the Plaintiff's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines ("Grid"), and concluded there exist a significant number of jobs in the national economy that the Plaintiff could perform.  (Tr. 22).  In doing so, the ALJ noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by [her] non-exertional limitations;" however, because Plaintiff could meet the mental demands of unskilled work, her non-exertional limitations had "little or no effect on the occupational base of unskilled work at all exertional levels."  (Tr. 22).  Therefore, the ALJ concluded that a finding of "not disabled" was appropriate under the framework of section 204.00 of the Medical-Vocational Guidelines.  (Tr. 22).

### C.    Analysis

Plaintiff advances two arguments on appeal.  First, Plaintiff argues that the ALJ's determination that she did not meet or equal the requirements of Listing 12.05C was  not supported by substantial evidence because the ALJ rejected, without proper explanation, Exhibit 7F which contained the opinion and proposed limitations of consultative psychiatric evaluators Ms. Jennifer Wilke-Deaton and Christi Bruenig, Ph.D.   Second, Plaintiff contends that the ALJ was not permitted to utilize the Grid to determine whether there existed a significant number of jobs Plaintiff could perform; rather, Plaintiff asserts that, due to her severe non-exertional impairment, the ALJ was required to employ a Vocational Expert (VE).  Each of these arguments will be addressed in turn.

**1.    Because the Plaintiff Failed to Satisfy All the Listing Requirements of 12.05C, the ALJ did not Err at Step 3 by Failing to Conclude that Plaintiff Met or Equaled that Listing.**

Plaintiff contends that the ALJ's finding that she did not meet the requirements of Listing 12.05C is not supported by substantial evidence; specifically, she argues that the testing and opinions contained in the Wilke-Deaton/Bruenig report supplied "sufficient evidence" to support a finding that Plaintiff met or equaled Listing 12.05C.  At Step 3 of the 5-step sequential analysis, the burden is on the claimant to establish that she meets or equals a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment.  *See* 20 C.F.R. § 404.1525(d).  Unless all the requirements of the listing are present, the claimant does not satisfy that listing.  *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987).  Upon review of the record herein, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairment does not meet or equal Listing 12.05C, and that the ALJ did provide adequate reasoning for his decision not to grant much weight to the opinions and testing of Wilke-Deaton/Bruenig.

Listing 12.05 defines "mental retardation" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05.  The required level of severity can be satisfied by "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* at 12.05C.  In order to be found disabled under Listing

5

12.05, Plaintiff must demonstrate that her impairment satisfies the diagnostic description for the listed impairment.  Therefore, Plaintiff will meet the Listing for mental retardation only "[i]f [her] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . ."  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00A).  Despite her arguments to the contrary, the record reflects that, regardless of one set of qualifying IQ scores, Plaintiff has failed to satisfy the requirements of the Listing.

Plaintiff disagrees with the ALJ's conclusion that she does not suffer from any significant adaptive functioning deficit.  Adaptive functioning describes "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."  DSM-IV-R, 42.  Mental retardation is typified by "significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  DSM-IV-R, 41.  Because satisfaction of the introductory paragraph of Listing 12.05 is required to meet the definition, the absence of an adaptive functioning deficit precludes a claimant from qualifying for disability benefits under that section.

Once the ALJ determined that Plaintiff had a medically determinable mental impairment, he considered, as required by 20 C.F.R. §§ 404.1520a(c), 404.920a(c), whether her mental impairment resulted in any limitations in four broad functional areas. He found no significant adaptive deficits in any of the areas.  Examining Plaintiff's "activities of daily living," the ALJ found no limitations as the Plaintiff's statements in her benefit

application and at the hearing establish that she "shops, paying by check or cash; she has friends who help her with child care; she keeps house for three persons while her husband works; and she can feed, bathe, and dress herself without assistance." (Tr. 18).  Under the area "social functioning," the ALJ likewise found no limitation as the Plaintiff "is able to function in an appropriate manner in the public domain in such places as doctor's and lawyer's offices, stores, schools and other facilities. . . . She visits with friends and family and transports friends on shopping trips." (Tr. 19).  Considering Plaintiff's "concentration, persistence, or pace," the ALJ found only mild limitation. The ALJ based this conclusion on the Plaintiff's "ability to drive a car, care for her own personal needs, watch television (and follow the plots), attend to her legal matters, shop, etc." (Tr. 19).  The ALJ reasoned that the Plaintiff's ability to do all of these things demonstrates her ability "to successfully perform simple, routine, one to two step tasks." (Tr. 19).  Finally, the ALJ found the record to contain no evidence which spoke to the fourth area "episodes of decompensation." (Tr. 19).

Plaintiff contends that the ALJ erred in rejecting the opinion of Wilke-Deaton/Bruenig that  Plaintiff would "have significant difficulty comprehending and following through with written and oral instructions in the workplace." (Tr. 218).  Plaintiff asserts that this opinion establishes a deficit in adaptive functioning sufficient to satisfy the introductory paragraph of Listing 12.05.  The ALJ disagreed, and consistent with 20 C.F.R. § 404.1527(d)(4), gave less weight to Wilke-Deaton/Bruenig's opinions regarding Plaintiff's ability to concentrate and follow instructions as their opinions were "internally inconsistent" and not supported by the record as a whole.  (Tr. 20, 22).

Specifically, the ALJ rejected Wilke-Deaton/Bruenig's IQ assessment because it was

contradicted by an earlier assessment performed by Plaintiff's school. (Tr. 203-10). In 1995 "the claimant had a writing fluency score of 97; she then drops to the first percentile, with her scores believed by Dr. Bruenig to be 'valid and reasonable estimates,'" even though "no apparent reason can be found for this precipitous decline in mental ability." (Tr. 20). Additionally, the ALJ found Wilke-Deaton/Bruenig's opinions regarding Plaintiff's adaptive deficits and intellectual capabilities to be untrustworthy as Plaintiff's activities of daily living and past employment belie a finding of mental retardation." [H]er adaptive functioning is nowhere near the mild mental retardation level. She is a stay-at-home mother who has a two year old, she drives, shops, visits . . . . She has worked as a cashier; now she purportedly can barely count." (Tr. 20-21). Based on his discussion of the Plaintiff's prior psychiatric examinations, and the ALJ's more general consideration of Plaintiff's mental functioning, the Court finds that the ALJ provided sufficient reasoning as to why he did not adopt Ms. Wilke-Deaton's opinions regarding Plaintiff's adaptive functioning.

Because Plaintiff did not establish that she had deficits in adaptive functioning, the ALJ properly determined that she failed to meet her burden of proving that her impairments met Listing 12.05C. For the reasons stated herein, substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal any listed impairment, including Listing 12.05C.

### 2.    The ALJ's Reliance on the Grid was not Reversible Error.

Plaintiff's second argument on appeal is that the ALJ erred in utilizing the Grids to determine whether there existed a significant number of jobs Plaintiff could perform. More specifically, Plaintiff argues that because she was found to have a severe non-exertional

impairment, the ALJ was required to consult a VE and could not rely solely on the Grids to determine whether Plaintiff was disabled.  Under the facts of this case, the Court disagrees.

Because Plaintiff had no past relevant work, Step 5 of the sequential evaluation required the ALJ to determine if she could perform other work, which is defined as jobs that exist in significant numbers in the national economy.   *See* 20 C.F.R. §§ 416.920(f), 416.960(c).   Rather than employ the services of a VE, the ALJ looked to the Grids to determine that there existed jobs Plaintiff was capable of performing.  *See* C.F.R. Pt. 404, Subpt. P, App'x 2.  When a claimant's vocational characteristics coincide with the criteria of a rule in the Grids, the existence of jobs in the national economy is established and the claimant is considered not disabled.  *See* 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt. P, App'x 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983).

In this case, at the time of the ALJ's decision, Plaintiff was 28 years old, which is defined as a younger individual, was found to be able to perform work at all exertional levels, had completed the twelfth grade, and did not possess any transferable work skills. (Tr. 22).  Consulting the Grid Table that corresponded to Plaintiff's RFC for work at all exertional levels, the ALJ determined that a finding of "not disabled' was appropriate under the framework of section 204.00 of the Grids.  (Tr. 22-23).

The Grids take into account only a claimant's exertional impairments: *i.e.*, strength for sitting, standing, walking, lifting, carrying, pushing and pulling.  20 C.F.R. § 404.1569(a). Therefore, reliance upon the Grids is inappropriate where a claimant has a significant non-exertional impairment, *i.e.*, an impairment that "restricts a claimant's performance of a full range of work at the appropriate functional capacity level . . . ."  *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health*

*& Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)).  If the non-exertional impairment is not significant, the Grids may be used to make the Step 5 determination.  20 C.F.R. § 404.1569a; *Kimbrough*, 801 F.2d at 796-97.

Kimbrough is instructive on this alleged error.  In *Kimbrough*, the claimant argued that the ALJ improperly applied the Grid to determine disability because pain is a non-exertional impairment and, therefore, precluded the use of the Grids.  The Sixth Circuit stated that it is only when the non-exertional limitation restricts performance at the full range of the designated level that reliance on the Grid is improper.  The court held that the ALJ's findings that the claimant had no non-exertional impairments, and could do a full range of sedentary work, had the effect of finding that his non-exertional impairment was not sufficiently severe to prevent him from performing a full range of sedentary work.  The court noted that the ALJ considered the claimant's pain in reaching his conclusion that the claimant could not perform medium or light work.  Upon finding that the objective evidence did not bear out the severity of claimant's pain, the court found substantial evidence existed to support the ALJ's finding, and reliance on the Grids was proper.

Similarly, in the case at bar, the ALJ's conclusion that Plaintiff could perform the full range of work at all exertional levels had the effect of finding that her non-exertional impairment (Borderline Intellectual Functioning) was not sufficiently severe to significantly limit her ability to do a full range of work at the designated level.  Indeed, this conclusion is supported by the ALJ's conclusion that Plaintiff's mental impairment would have little or no effect on the occupational base of unskilled work at all exertional levels.  (Tr. 22).

The Grids take administrative notice of the numbers of unskilled jobs at various exertional levels that exist throughout the national economy. 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200.00(b). The Grids become inapplicable when a claimant's non-exertional impairments, or combination of exertional and non-exertional impairments, fail to coincide with the criteria of a rule in the Grids. In such situations the occupational base of the Grids is limited, thereby rendering the number of unskilled jobs recognized by the Grids inaccurate in regards to that particular claimant. Social Security Rule 85-15. However, when a claimant's non-exertional impairments do not significantly erode the occupational base represented by the Grids, the claimant's occupational base therefore includes *all* of the unskilled jobs represented by the Grids. "Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational job base for persons who can meet the mental demands of unskilled work." SSR 85-15. Therefore, because the ALJ determined that Plaintiff's mental impairment, though severe, had little or no effect upon the occupational base of unskilled work at all exertional levels, the ALJ deemed it appropriate to rely upon on the Grids to find that Plaintiff "not disabled." SSR 96-9p.

In challenging the ALJ's reliance upon the Grids, Plaintiff is, in essence, alleging that the ALJ's finding, that Plaintiff's non-exertional impairment did not significantly limit her ability to perform the full range of unskilled work, was not supported by substantial evidence. However, this argument is not persuasive as the record herein contains substantial evidence that, despite her mental limitation, the ALJ was correct in finding that Plaintiff could meet the mental and physical demands of unskilled work at all exertional levels.

The reports from the consultative physicians and psychologists - including Ms. Wilke-Deaton support the ALJ's conclusion that Plaintiff could meet the mental demands of unskilled work.   The basic mental demands generally required by   unskilled work included the abilities, on a sustained basis, to: understand, remember and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting.  SSR 96-9p. Both Dr. Eardley and Ms. Wilke-Deaton found Plaintiff capable of relating appropriately to others, making simple decisions, and adapting to changes in her daily routine.  (Tr. 182, 218, 219).  And, although the record is not completely consistent regarding Plaintiff's ability to understand, remember, and carry out simple instructions, Dr. Eardley, and non-examining physicians Drs. Cutler and Athy all found Plaintiff to be unimpaired in this area. (Tr. 182, 183, 220).  Only Ms. Wilke-Deaton opined that Plaintiff would have any difficulty comprehending and following through with simple instructions. (Tr. 218).  Despite this one area of disagreement among the physicians, the reports discussed above support the ALJ's conclusion that Plaintiff could perform work that requires little or no judgment to do simple duties that can be learned on the job in a short period of time.  *See* 20 C.F.R. § 416.968(a); SSR 85-15.

Because the record does not indicate that Plaintiff had any additional mental limitations, the ALJ was permitted to rely on the Grids to find Plaintiff "not disabled."  *See Moon v. Sullivan*, 923 F.2d 1175, 1180-82 (6th Cir. 1990) (claimant's mental impairments did not significantly affect his ability to perform a full range of work at the given exertional level, and thus did not preclude the use of the Grids).  As a result, Grid Rule 204.00 satisfied the Commissioner's burden of showing that work existed in significant numbers

in the national economy which Plaintiff could perform.  *See Campbell*, 461 U.S. at 461-62,
470.  Accordingly, the Grids provided substantial evidence to support the ALJ's conclusion
at Step 5 of the analysis, and the ALJ did not err in failing to consult a VE during the last
step of his sequential analysis.

### III. Conclusion

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by
substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #8)
is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc.
# 9) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

This 17TH day of September, 2008.



Signed By:

David L. Bunning   _DB_

United States District Judge

G:\DATA\SocialSecurity\MOOs\5-07-117-SparksMOO.wpd